UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES DIVISION/IBT,<br><br>Plaintiff,<br><br>v.<br><br>BNSF RAILWAY COMPANY,<br><br>Defendant. | CASE NO.<br><br>COMPLAINT |

**COMPLAINT**

The Brotherhood of Maintenance of Way Employes Division/IBT ("BMWED" or "Union") brings this complaint against Defendant BNSF Railway Co. ("BNSF" or "Carrier") alleging that the Carrier has violated the Railway Labor Act, 45 U.S.C. § 151 et seq. ("RLA"). BMWED seeks a declaratory judgment that by contracting-out for the performance of roadway equipment mechanic work, BNSF has violated Sections 2 Seventh and 6 of the Railway Labor Act ("RLA"), 45 U.S.C. §§ 152 Seventh and 156, by unilaterally changing and abrogating the parties' agreement applicable on BNSF's North lines.

COMPLAINT – Page 1

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

# PARTIES

1. BMWED is an unincorporated labor association that maintains its headquarters in Novi, Michigan. On January 1, 2005, the BMWED became an autonomous division of the International Brotherhood of Teamsters. Prior to that date, BMWED was an international union founded in 1887 that went by the name Brotherhood of Maintenance of Way Employes ("BMWE"). BMWED is the representative for collective bargaining under Section 1 Sixth of the RLA, 45 U.S.C. §151 Sixth, of all employees of BNSF working in the class or craft of maintenance of way employee.

2. BNSF is a rail carrier as that term is defined in Section 1 First of the RLA, 45 U.S.C. §151 First. BNSF conducts rail operations in various States in the Western half of the United States, including Washington. BNSF is the product of control and merger transactions that combined the rail lines and properties of the former Burlington Northern Railroad ("BN"), the former Atchison Topeka and Santa Fe Railway ("ATSF"), the former St. Louis and San Francisco Railroad ("Frisco"), and other formerly separate railroads.

# JURISDICTION AND VENUE

3. This Court has jurisdiction to hear BMWED's complaint pursuant to 28 U.S.C. §§ 1331 and 1337 because it arises under the RLA, an act of Congress regulating interstate commerce; and because BMWED seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391 (b) and (c) because BNSF owns and operates lines of railroad within this District; the State of Washington is one of the areas where the Carrier is contracting-out the performance of roadway equipment mechanic work in violation of the RLA and the BMWED Vice General Chairman for the Burlington Northern System Federation ("BURNOR") responsible for that portion of BNSF lives in Castle

COMPLAINT – Page 2

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

Rock, Washington.

## STATEMENT OF THE CLAIM

5.  Among other things, BNSF maintenance of way employees represented by BMWED are responsible for constructing, repairing, rehabilitating, upgrading, renewing, inspecting and maintaining BNSF's track and right of way, as well as bridges, buildings, and other structures and performing mechanic work on roadway maintenance equipment machinery and the operating and control systems for that machinery.

6.  BMWED and BNSF are parties to several collective bargaining agreements ("CBA" or "Agreement") that establish the rates of pay, rules and working conditions of BNSF maintenance of way workers and establish certain rules concerning the performance of maintenance of way work on BNSF.

7.  One of the agreements between BMWED and BNSF is the agreement applicable on the former Burlington Northern portion of BNSF that was updated and republished in 2002 ("North CBA"); that agreement also applies to Regional and System Production Gangs that traverse the entire BNSF system.

8.  The North CBA identifies the type of work that is maintenance of way employee work and covered by the North CBA in its Scope Rule ("Rule 1") which provides (emphasis added):

> A. These rules govern the hours of service, rates of pay and working conditions of all employes not above the rank of track inspector, track supervisor and foreman, in the Maintenance of Way and Structures Department, including employes in the former GN and SP&S roadway equipment repair shops and welding employes.
>
> B. The Maintenance of Way and Structures Department as used herein means the Track Sub-department, the Bridge and Building Sub-department, the Welding Sub-department, *the Roadway Equipment Sub-department and the Roadway Machinery Equipment and Automotive Repair Sub-department of the*

COMPLAINT – Page 3

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

*Maintenance of Way Department* as constituted on date of consummation of this Agreement.

9. The North CBA also defines all the job classifications of positions covered by that agreement in its Rule 55. Rule 55 further provides that work within the Scope of that agreement customarily performed by those job classifications will be performed by BNSF employees in those classifications, and that such work will not be contracted-out, except in certain specified situations: when the work requires "special skills not possessed by the Company's employes, special equipment not owned by the Company, or special material available only when applied or installed through supplier, are required; or when work is such that the Company is not adequately equipped to handle the work, or when emergency time requirements exist which present undertakings not contemplated by the Agreement and beyond the capacity of the Company's forces". Rule 55, Note, provides:

> By agreement between the Company and the General Chairman, work as described in the preceding paragraph which is customarily performed by employes described herein, may be let to contractors and be performed by contractors' forces. However, such work may only be contracted provided that special skills not possessed by the Company's employes, special equipment not owned by the Company, or special material available only when applied or installed through supplier, are required; or when work is such that the Company is not adequately equipped to handle the work, or when emergency time requirements exist which present undertakings not contemplated by the Agreement and beyond the capacity of the Company's forces. In the event the Company plans to contract out work because of one of the criteria described herein, it shall notify the General Chairman of the Organization in writing as far in advance of the date of the contracting transaction as is practicable and in any event not less than fifteen (15) days prior thereto, except in "emergency time requirements" cases. If the General Chairman, or his representative, requests a meeting to discuss matters relating to the said contracting transaction, the designated representative of the Company shall promptly meet with him for that purpose. Said Company and Organization representative shall make a good faith attempt to reach an understanding concerning said contracting, but if no understanding is reached the Company may nevertheless proceed with said contracting, and the Organization may file and progress claims in connection therewith.
>
> Nothing herein contained shall be construed as restricting the right of the Company to have work customarily performed by employes included within the scope of this Agreement performed by contract in emergencies that affect the movement of

COMPLAINT – Page 4

18 WEST MERCER ST., STE. 400  
SEATTLE, WASHINGTON 98119  
TEL 800.238.4231 | FAX 206.378.4132  
BARNARD IGLITZIN & LAVITT LLP

traffic when additional force or equipment is required to clear up such emergency condition in the shortest time possible.

10. BMWED and BNSF are also parties to a December 11, 1981 national agreement that commits BNSF to make good faith efforts to reduce the amount of contracting-out of maintenance of way work. That agreement provides:

> The carriers assure you that they will assert good-faith efforts to reduce the incidence of subcontracting and increase the use of their maintenance of way forces to the extent practicable, including the procurement of rental equipment and operation thereof by carrier employes.
>
> The parties jointly reaffirm the intent of Article IV of the May 17, 1968 Agreement that advance notice requirements be strictly adhered to and encourage the parties locally to take advantage of the good faith discussions provided for to reconcile any differences. In the interests of improving communications between the parties on subcontracting, the advance notices shall identify the work to be contracted and the reasons therefor.
>
> Notwithstanding any other provisions of the December 11, 1981 National Agreement, the parties shall be free to serve notices concerning the matters herein at any time after January 1, 1984. However, such notices shall not become effective before July 1, 1984.

11. On June 21, 2024, BNSF wrote to the General Chairman of BMWED's BURNOR Federation informing him of BNSF's plans to use outside contractors to perform mechanic work on roadway maintenance equipment machinery and the operating and control systems for that machinery in District 100 (including the 229 mile Fallbridge Subdivision in Southern Washington, the 155 mile Scenic Subdivision from Seattle, Washington to Wenatchee, Washington, and the Gateway Subdivision), District 200 (Hi Line, Milk River, Glasgow, and Great Falls), and District 300 (Grand Forks, Devils Lake, KO, and Glasgow) of the Carrier's system and "all work associated with" that mechanic work.

12. In the June 21, 2024 letter, BNSF estimated that 19 BMWED scope covered positions would be filled by contractors by July 8, 2024 ("7 in District 100, 6 in District 200, and 6 in District 300"), but this contracting out notice was also designed to serve as an open-ended

COMPLAINT – Page 5

18 WEST MERCER ST., STE. 400   BARNARD
SEATTLE, WASHINGTON 98119   IGLITZIN &
TEL 800.238.4231 | FAX 206.378.4132   LAVITT LLP

1  "notice that BNSF proposes to contract for additional mechanic workers" with no limit on the time, number, or duration of the contractors to perform BMWED scope work.

13. BNSF's June 21, 2024 letter explained that this work is being contracted out because of "challenges in maintaining adequate staffing levels to meet [the Carrier's] operational needs" and the "number of vacant positions spread across all three districts" means that "BNSF is not adequately equipped to handle all aspects of the project" – even though "this project" does not refer to a discrete project and instead refers to the Carrier's ongoing routine maintenance and repair work on the Carrier's roadway maintenance equipment. BNSF explained "[d]espite our efforts to maintain our workforce by providing training and hiring additional personnel, a significant number of employees have either chosen not to accept or have left mechanic positions." The Carrier has characterized this "chronic issue" of vacancies as an issue that has been unresolved over multiple years of efforts at hiring.

14. On July 3, 2024, BMWED's General Chairman on BURNOR wrote to BNSF and laid out the Union's position: (1) "contract[ing]-out this mechanic work without BMWED concurrence… would constitute a unilateral repudiation of our Agreement" by abrogating the express provision of Rule 55 of the Agreement; (2) the Carrier's justification for contracting out this work is based on BNSF's "own deliberate actions" through "its failure and refusal to maintain an adequate workforce sufficient to perform the work necessary for its operations"; and (3) BNSF has prevented its own workforce from even attempting to complete this work since the May 13, 2024 imposition of a policy that all employees in the Carrier's Engineering Department (which covers all BMWED-represented employees) are limited to working 8 hours a day until further notice and prohibited from working overtime.

COMPLAINT – Page 6

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

15. BNSF's May 13, 2024, policy prohibiting overtime for the Carrier's Engineering Department employees (including roadway equipment mechanic workers) is a significant factor in the unavailability of employees to perform this work. Prior to the policy, the nature of roadway equipment mechanic work necessitated a significant amount of overtime. Shifts had to start very early (before the employees who use the roadway equipment began their shifts) and end very late (after the roadway equipment was done being used for the day). These are hard jobs with long hours, but the availability of overtime pay made them desirable. BMWED's General Chairman on BURNOR has repeatedly pointed out to BNSF that the arbitrary prohibition on overtime has driven employees to bid off of roadway equipment mechanic jobs and bid onto vacancies in Carrier's traveling work gangs performing track maintenance where there is no prohibition on overtime.

16. As part of BMWED's July 3, 2024, letter, the Union included a chart showing the seniority rosters on the districts where BNSF has proposed contracting out roadway equipment mechanic work:

|     | 2016  | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
|-----|-------|------|------|------|------|------|------|------|------|
| 100 | 862   | 807  | 749  | 707  | 707  | 684  | 665  | 662  | 654  |
| 200 | 698   | 642  | 591  | 550  | 539  | 535  | 514  | 510  | 490  |
| 300 | 1,052 | 927  | 839  | 760  | 725  | 694  | 635  | 618  | 601  |

BNSF has decreased its workforce in District 100 from 862 employees in 2016 to 654 employees in 2024 – it now stands at 75% of the 2016 workforce. BNSF has decreased its workforce in District 200 from 698 employees in 2016 to 490 employees in 2024 – it now stands at 70% of the 2016 workforce. And BNSF has decreased its workforce in District 300 from 1,052 employees in 2016 to 601 employees in 2024 – it now stands at 57% of the 2016 workforce.

17. The amount of trackage and the number of bridges, structures, and pieces of roadway maintenance equipment owned and maintained by BNSF has not materially changed since 2016.

COMPLAINT – Page 7

18 WEST MERCER ST., STE. 400  
SEATTLE, WASHINGTON 98119  
TEL 800.238.4231 | FAX 206.378.4132  
BARNARD IGLITZIN & LAVITT LLP

18. BNSF's June 21, 2024, letter claims that the Carrier has been trying to increase its maintenance of way work force by hiring, but it has failed abysmally. In 2023, BNSF only hired 222 new employees (29 of whom did not stick with the jobs); and the Carrier's total maintenance of way work force was actually lower in 2023 (5,760) than it was at the end of 2022 (5,849).

19. BMWED's July 3, 2024, letter notes that BNSF is currently making no effort to hire new mechanics to perform BMWED scope covered work. The letter includes a screenshot of BNSF's website with job postings that only lists a single vacancy for a mechanic performing work within the scope of the International Association of Machinists.

20. BMWED concluded the July 3, 2024, letter by requesting a conference between BNSF and the Union to discuss the matter pursuant to Rule 55 of the CBA.

21. BMWED and BNSF held a conference to discuss the Carrier's contracting out notice on July 6, 2024. The Union reiterated its objections and its reasoning to the Carrier during this meeting.

22. On July 18, 2024, BMWED's General Chairman on BURNOR wrote to BNSF to confirm the substance of the discussion between the parties during the July 6, 2024, meeting. The General Chairman stated, "I do not concur with this work being contracted to outside parties." In outlining the Union's objections, he explained that "BNSF claims that it has made efforts to recruit people to work as roadway equipment mechanics, but given how long this has gone on, that claim is simply not credible" and if "BNSF's hiring efforts have been unsuccessful, it needs to do more to recruit employees; it cannot just keep doing the same thing, relying on the same approaches when those approaches have been unsuccessful as the Carrier acknowledges." The Union wrote that "[w]hat BNSF cannot do is fail to make meaningful efforts to hire and then rely on recruitment shortfalls as a reason to contract out our work."

COMPLAINT – Page 8

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

23. On July 29, 2024, BNSF responded to BMWED's General Chairman on BURNOR. The Carrier did not meaningfully dispute the substance of the Union's positions at all in this letter. BNSF dismissed the Union's positions about the Carrier's failure to maintain a sufficient workforce and the problems with the system-wide prohibition on overtime as just "cherry picked information" and the Union "accepting their own opinions as fact." But BNSF provided no argument or information to contradict the substance of the Union's position.

24. In the July 29, 2024, letter, BNSF stated that the "truth of the matter is that BNSF agrees that it has qualified employees that can do the work" but instead blamed these vacancies on the Union: "The Organization cannot seriously argue that when Carrier forces abandon work opportunities, BNSF is somehow prevented from contract such work to others willing to perform it." The Carrier is arguing that because BMWED employees who are qualified to do this mechanic work have bid onto other work – simply following the financial incentives created by the Carrier and using their seniority to move to track maintenance jobs where they can earn valuable overtime pay – that BNSF's workforce is to blame for not being available to do that mechanic work. If BMWED members filled every vacancy for roadway maintenance equipment mechanics right now, there would be the same "challenges in meeting adequate staffing levels" based on vacancies in other parts of BNSF's workforce because the Carrier has been intentionally understaffed for years.

25. In BNSF's July 29, 2024, letter, the Carrier finally answered a series of numbered questions presented by the Union. BNSF said it is "unknown" which contractor (or contractors) will be used to complete this work; the number of contractor employees is "Unknown; but likely the same or less than the number of vacancies of BMWE traveling mechanics; there is no limit to the number of days per week that contractors will be used; there is no limit to the number of hours

COMPLAINT – Page 9

per day contractors will be used; and contractors will be used for as long as the Carrier needs them. BNSF also clarified "In regard to the number of contractor employees, BNSF will continue to post those jobs and if BMWE employes/members bid to those jobs they there will be a decrease in contracted mechanics." In short, BNSF will use as many contractors as are convenient for the Carrier without any limits and will deploy those contractors interchangeably with its unionized workforce for the foreseeable future without any agreement with the Union in direct contradiction to the explicit terms of the parties' Agreement.

26. BNSF has not provided any further communication since the Carrier's July 29, 2024 letter, but BNSF's consistent position in its communication with the Union is that the Carrier is proceeding with contracting out BMWED-scope covered roadway maintenance equipment mechanic work and is doing so imminently.

**CAUSE OF ACTION**

27. BMWED repeats and incorporates by reference each and every allegation of paragraphs 1 through 26.

28. Section 2 Seventh of the RLA, 45 U.S.C. §152 Seventh provides: "No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in section 156 of this title."

29. Section 6 of the RLA, 45 U.S.C. §156, provides:

> "Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in the agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice. In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board

COMPLAINT – Page 10

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

Case 2:24-cv-01245-LK   Document 1   Filed 08/14/24   Page 11 of 12

has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon, as required by section 155 of this title, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board."

30. By having contractor forces perform BMWED-scope covered roadway maintenance equipment mechanic work, BNSF is effectively abrogating, and changing the parties' agreement not "in the manner prescribed in such agreement[] or in section 156 of" the RLA, and therefore in violation of Section 2, Seventh of the RLA.

**REQUEST FOR RELIEF**

WHEREFORE, the BMWED respectfully requests that the Court:

A. DECLARE that by having contractor forces perform BMWED-scope covered roadway maintenance equipment mechanic work BNSF has violated Section 2, Seventh of the RLA;

B. GRANT the BMWED reasonable attorneys' fees and the costs of this action;

C. GRANT the BMWED all other relief that the Court deems just and proper.

RESPECTFULLY SUBMITTED this 14th day of August, 2024.

*s/ Sarah E. Derry*
Sarah E. Derry, WSBA No. 47189
**BARNARD IGLITZIN & LAVITT LLP**
18 W. Mercer Street, Suite 400
Seattle, WA 98119
Tel: (206) 257-6021
Fax: (206) 378-4132
derry@workerlaw.com

COMPLAINT – Page 11

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

| | |
|---|---|
| 1 | Richard S. Edelman* |
| 2 | Mooney, Green, Saindon, Murphy & Welch, P.C.<br>1920 L Street NW, Suite 400 |
| | Washington, DC 20036 |
| 3 | Tel: (202) 783-0010 |
| 4 | Fax: (202) 783-6088<br>redelman@mooneygreen.com |
| 5 | Aaron S. Edelman* |
| | Mooney, Green, Saindon, Murphy & Welch, P.C. |
| 6 | 1920 L Street NW, Suite 400 |
| | Washington, DC 20036 |
| 7 | Tel: (202) 783-0010 |
| | Fax: (202) 783-6088 |
| 8 | aedelman@mooneygreen.com |
| 9 | *Application for admission *pro hac vice* forthcoming. |
| 10 | |
| 11 | *Attorneys for Plaintiffs* |

COMPLAINT – Page 12

18 WEST MERCER ST., STE. 400  **BARNARD**
SEATTLE, WASHINGTON 98119  **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132  **LAVITT LLP**